Good morning. We have two more lawyers who will be participating. There's Ms. Howell, Mr. Kosky. Not with us yet. There he is. Good morning, Mr. Kosky. Good morning. All right. We can proceed, Mr. Sir. Good morning, Your Honor. The First Amendment's freedom to associate plainly presupposes a freedom not to associate. But before we get to that principle, I realize I have some hurdles to jump. And if you don't buy the argument on narrowing over time, and you don't buy the GVR, this case is really about vertical stare decisis, at least at this stage. So let me start here. Is it ever possible for this court to recognize that the U.S. Supreme Court has overruled one of its decisions by implication? And in 2014, this court answered that question, yes. In a case called Baskin v. Rogin, which, Judge Hamilton, you may remember sitting on the panel. There, the court looked at a precedent of the U.S. Supreme Court and determined that it was, in the opinion's phrase, no longer authoritative because of subsequent developments in the Supreme Court's doctrine. Now, unfortunately, Baskin doesn't give us much more to work with than that. And so in this case, we've turned to these issues. But Mr. Seward, you do discuss this, and it's certainly an important issue for the operation of a court system. But with this precise issue, there was the Jarchow case where we said this is above our pay grade. Keller is there. And it went before the Supreme Court on anything substantive into a decision either to grant or deny. The court has its own reasons. We know that principle, too. Two people dissent, Justice Thomas and Justice Gorsuch. But this is pretty fresh off the page. And I just am not sure why we should handle this case any differently. Just say, you guys get to ask the Supreme Court to do whatever you want and go with our blessing. But that's where we are. So I think two things, Your Honor, about the Jarchow case, specifically the summary affirmance of the Seventh Circuit. The first is it's a summary disposition. But the Supreme Court didn't. In other words, we ruled consistently with Keller, right, as we felt we had to do. And if we had been flouting a Supreme Court overruling of Keller, sub salentio overruling, there would have been a per curiam reversal. I mean, the Supreme Court doesn't take kindly to courts of appeals ignoring what is said. And we do our best to behave ourselves. But that's not what happened. There was a petition for cert, cert So I think a summary disposition at this court is not binding on a later panel of this court. But it was perfectly clear what we had ruled. The Supreme Court is free to take cert from our non-presidential orders. It's free to take cert from our published opinions. It's a disposition of the case. There was nothing wrong with it from the Supreme Court point of view. And if we had just said, you know, we're tired of Janus, we don't want to apply Janus anymore, it would have been reversed. So I think your honor's initial comment is the right one, which is the court has its own reasons. And it's inappropriate for this court to read anything more into it than the fact of the denial. It may simply be that the court's dance card for controversial cases was filled this term. It may be that the court didn't have a full compliment at the time that the court heard the petition in conference. We just don't know. What we brought here is a case that's, I think, different from JARCO in that we presented three different reasons on a full briefing that this court should consider the overruling by implement overruling by implication question. And the JARCO plaintiffs never took that opportunity. They asked for some reaffirmance. Here we've talked about the GVR and FLEC. We talked about the history of narrowing over the court's previous cases in this area. And what happened in FLEC after the GVR? The Eighth Circuit rejected the plaintiff's claim. But I think if you read the opinion, it's pretty clear that the judges in that case were unhappy with the plaintiffs because of procedural posture of the case. Are you able to write an opinion that describes our mood, our feelings about Janus? I'm asking you to recognize that Janus has been overruled by implication. If the court doesn't get there. Keller, you don't mean Janus. I'm going to give you a different question. I'm sorry. Yes. Keller has been overruled by implication. If the court doesn't get there, I would certainly appreciate an opinion like Judge Sykes' opinion in Price, which at least recognizes that the puzzle pieces of the court's doctrine don't fit together currently. But I think this case is more than Price for the reason we laid out in our brief. It's different because here the Supreme Court actually did overrule something. Now, admittedly, it didn't overrule Keller. It overruled Abood. But Keller relies on Abood to such an extent. It's simply different from Price where this court was grappling with a tension or irreconcilability between all valid precedents. Here we're dealing with a precedent that has been overruled and asking does that follow through to other precedents that rely on it as its foundation. Maybe another way of asking the question is— A rational person could think that the public employee union question underlying Abood and Janus and the other things, while important, isn't a perfect overlap with the kind of sovereignty concerns one would have with the way a state Supreme Court has structured its entire bar arrangement and the federalism issues there, the comedy issues there. I'm not saying maybe the Supreme Court's going to jump on this. Fine. But these are not perfect equivalents. So respectfully, Your Honor, I think the court dealt with that question in Keller. In Keller, one of the arguments was that this was more government speech and should be treated not as a compelled fee or compelled dues, but as a tax. And the court rejected that argument and recognized that the state bar functions much more like a trade association or a guild and that guilds in a professional white-collar context should be treated the same as guilds in a blue-collar context like unions. And so if you look at our briefs, for instance, we've only asked for part of Keller to be overruled because I think the court is right about that, that these are more like trade associations than government speech. But even were that not the case, Judge Wood, I would still say Keller uses rational basis, whereas Janus requires exacting scrutiny. And I would say Keller rejects the dues arbitration, I'm sorry, Janus rejects the dues arbitration provisions that are upheld in Keller. And so, you know, those reasons alone would at least prompt this court to revisit and think afresh on this question. I see I've reached my rebuttal time, so I'm happy to pause unless there are other questions. All right, thank you very much. Thank you, ma'am. And Ms. Powell, I think you're going first for the state bar defendants. Yes, thank you, Your Honor. Excuse me. May it please the court, I'm Roberta Howell and I represent the President and the Executive Director of the State Bar of Wisconsin. This case is really the latest chapter in what this court has previously described as the seemingly never-ending battle between some Wisconsin lawyers against mandatory membership in the State Bar of Wisconsin. And as a result, it really presents issues that are neither new nor complicated, as Judge Wood, you've already pointed out. Within the last year, a panel of this court in the JARCO case summarily affirmed another decision raising precisely the same questions and dismissing that case based on Keller and Lathrop. After that case was decided by this court, as you also recognize, the U.S. Supreme Court was asked to take review and it rejected that. The only thing that has changed since then is that rejection. You also asked about Fleck v. Wetch. The court also refused to take certiorari in that case even after they reaffirmed the decision after it was sent back to be considered in light of Janus. In fact, they rejected it twice because the Fleck defendants, I'm sorry, the Fleck plaintiffs after cert was rejected the first time asked for reconsideration of that and asked for it to be reconsidered in light of the JARCO case and the court rejected the petition for review in that bypasses opportunities to revisit its own precedents in light of intervening new precedents until it's good and ready to do so. As Judge Wood said, it has its own reasons for taking that approach and as lower court judges we take our cues accordingly. So to the extent that this is an argument that keeps percolating up through the courts, that there's nothing unusual about that. The question is what do we do about it now? Is this sufficiently different in kind or quality based on the overruling of Abood that the principle of vertical stare doesn't apply and we can start from scratch and apply the new precedents? And the answer to that is I think both inherent in the comments in the dissent to the denial of review in JARCO where Justice Thomas made very clear that the claims are foreclosed by Keller, period, end of discussion, and that only that court can overrule its constitutional decisions. Similarly, every other court that has addressed this issue since Janus was decided and that includes claims against the state bars in Texas, Oregon, Oklahoma, Texas, and Louisiana, and Michigan have all come down the same way. Keller and Lathrop remain good law. As this court found in the National Rifle Association case, a lower court may not overrule a Supreme Court case even if later cases have, and I quote, deeply shaken the early cases foundation or demolished its intellectual underpinning. The short version is Keller and Lathrop are binding and this case is not different. The law has not changed. Keller and Lathrop actually were affirmed by the court in Harris. They were not overruled in Janus. Janus relied on Harris. Harris reaffirmed the foreclosed claims here. I want to also briefly in the short period of time I have left here respond briefly to the comment that Janus essentially overruled any procedures relating to how First Amendment rights might be protected in a mandatory bar association. The lower court didn't reach that issue here finding it did not need to do so, but the Janus case did not overrule Hudson, which is the underlining case that addresses procedures protecting First Amendment rights in this context. It simply said that in light of what it had seen in the union context, that line drawing and those procedures were not working, but Keller specifically again pointed to Hudson and said those procedures and maybe others would be applicable here. Here there are procedures in place and we've described them in some detail in the materials in the record and those procedures also protect the dissenting members' First Amendment rights. I see I'm going to run out of time here, so I just want to reiterate that in light of the binding nature of Keller and Lathrop as most recently affirmed in the JARCO case, we respectfully request that the decision below be affirmed. Thank you very much. Mr. Koski. May it please the court, Clay Koski appearing on behalf of the Wisconsin Supreme Court justices and I have two main points. First, the plaintiff's claims are foreclosed by Keller. Second, the plaintiff cannot pursue his claims because he lacks standing to pursue them against the justices who are also immune from suit. Regarding that... The standing and the immunity questions come before the merits. Right. I think that... Structured the briefing a little odd in that respect. I think this is maybe an unusual case where the merits arguments are in fact so such a lock and so strong that we chose to put them first, although I debated it because I typically would do the same. We think... I want to talk about the standing and immunity arguments because I don't have a lot to say about the merits. I think it's already been covered. With regard to standing, we believe that these justices do not initiate enforcement action. So number one, that's the first point. The second point with regard to standing... As you know very well, the state Supreme Court is the enforcement authority. It's the regulatory authority, the licensing authority, and the disciplinary authority. OLR doesn't impose discipline. The OLR is an agency of the court and initiates investigations and brings charges, but... Or initiates, you know, complaints, but the enforcement authority is the court itself. The OLR can't do anything by way of enforcement. And the rules that the Supreme Court has established provide for an automatic suspension on non-payment of bar dues. We agree with all that, but this case, as we pointed out in our brief, this is a different situation from the Supreme Court of Virginia case that the U.S. Supreme Court decided in 1980. In that case, the court observed that the Virginia justices had the ability to independently initiate essentially a prosecution for a violation of the Supreme Court rules. The justices do not have that authority in Wisconsin. That is a distinguishing factor here that makes them immune. I also want to point out that the complaint, if you parse the complaint, it is repeatedly focusing on the rulemaking of the allegation that Mr. Feil had a plan to violate the rules and that only because of the justice's threat of enforcement did he decide to abandon his plan to violate the rules. He doesn't make that kind of allegation. The existence of the rule itself is a standing threat of enforcement on non-payment. That's what the rule in fact says. And so the court, and the court, we know the court has enforced these rules with indisciplinary actions. The argument, the standing argument and unity argument are clear losers. In the pre-enforcement context, though, this is the analogy that I'd like the court to consider. What the plaintiff is trying to do here is not to sue the prosecutor to stop the prosecutor from pursuing an action, but he's trying to sue the judge who might sentence him. And that is the wrong approach in a pre-enforcement action under the First Amendment. That is not consistent with what this court's precedents hold. So we think that that is a valid argument against standing here. With regard to the merits, I want to make two brief points. Number one, the point that the plaintiff made regarding the Harris decision, the U.S. Supreme Court case from 2014, regarding the idea that there is now only one interest for a state bar. We reject that. And we believe, as we pointed out in our brief, that the plaintiff is selectively quoting from the Harris case. There is a key sentence on pages, it's at 573 U.S., 655 and 656 in Harris, that every time the plaintiff is referencing Harris and saying that the quality of legal services is no longer an interest, the plaintiff is intentionally leaving a sentence out of that Harris decision, which expressly referenced back those two dual interests. And that's what, in Kingstad, that's what this court repeatedly said, the dual interests that are in a state bar. Even the dissent from you, Chief Judge Sykes, said the dual interests. So that idea that Harris somehow swiped away one of those two interests is not correct. And we believe that that is an erroneous reading of Harris. For the reasons that we stated in our brief and in this argument, I would ask that this court affirm the District Court's judgment. Thank you very much. Thank you, Your Honor. I think two points in two minutes. So first on the standing and immunity questions that Mr. Koski has raised, I think Susan B. Anthony was versus Election Commission is really the right starting point, that there the plaintiff sued the Election Commission. He didn't sue Tom, a particular bureaucrat at the Election Commission, in a particular cubicle who has the initial decision making authority about whether to prosecute the Susan B. Anthony list. He didn't sue Tom's supervisor. He didn't sue the administrative law judge. They sued the commission, because the commission is the authority that enforces the rules. And I think that's the same here. It's important to remember in the Supreme Court of Virginia case that the judges were immune because they were acting in their judicial capacity. Here, the judges are not acting in their judicial capacity. They're acting in an administrative capacity as the administrators and superintending authority over Wisconsin's judicial system. The second thing I want to say is, for me, this case really comes down to the question, at least at this stage, can this court ever recognize an overruling, or is that per se impossible? And I think Baskin and Levine, as long as they're both still good law, say that it is possible for this court to recognize an overruling by implication. It's a tough hill to climb. It's a rare and unique circumstance, but it's possible. When should that rare circumstance occur? I think the answer is when the Supreme Court has overruled one major foundational case, all the cases that are built on that case, not simply rely on that case, not simply cite on that case, but whose entire foundation is that case, should also be overruled by implication. That's our argument today. We appreciate the court's time. All right. Thank you very much. Our thanks to all counsel. The case is taken under advisement.